**OHIO NATIONAL LIFE INS. CO., etc., Plaintiff-Appellee, v STRUBLE, et., Defendants-Appellants.**

Ohio Appeals, First District, Hamilton County.

No. 6826. Decided May 17, 1948.

Bettinger, Schmitt & Kreis, Long & Bloom, Cincinnati, for plaintiff-appellee.

Robert N. Gorman, Roy L. Struble, Harold C. Knecht, Cincinnati, for defendants-appellants.

## OPINION

By HILDEBRANT, J.:

This cause is now before the Court de novo, following the action of this Court in upholding the right of appeal, reported in **80 Oh Ap, 531; 49 Abs, 200,** wherein the nature of the action is set forth in the syllabus.

It is, therefore, sufficient to state here that the validity of the plaintiff Insurance Company's proceeding for mutualization is attacked by defendants as dissenting minority stockholders.

The case is presented to this Court on the petition of plaintiff for a declaratory judgment filed after demand made by the defendants, the amended and supplemental answer and cross-petition of the defendants filed in this Court, and upon the record from the court below in the consolidated actions, together with additional evidence by way of deposition and the exhibits.

Since in **Koplin v Ohio National Life Insurance Company,
143 Oh St, 239,** on the suit of a non-participating policy holder,
the Supreme Court held the mutualization statutes here in-
volved (§§9364-1 to 9364-8 GC) constitutional, the defendants
assume the validity of said statutes generally, and rely on
other grounds hereinafter set forth.

The defendants contentions are:

I.   The plan was not legally adopted, for three reasons:—
A.   It was prematurely presented.   B.   It did not receive a
majority vote.   C.   It did not comply with the Securities Act of
1933.

II.   Fraud invalidated the vote.

III.   The plan is fradulently illegal.

IV.   The operative effect of the plan and statute is in-
valid and unconstitutional.

We first consider objection A.

The legislature provided for the conversion of a domestic
stock life insurance corporation into a mutual life insurance
corporation by §§9364-1 to 9364-3 GC, effective August 23,
1937; those sections were amended and became §§9364-1 to
§9364-8 GC, effective July 17, 1941.   Under these amended sec-
tions, four steps are required to effectuate a mutualization
plan, namely:—1.   Adoption of a plan by the Board of Direc-
tors.   2.   Approval by the stockholders.   3.   Approval by the
policy holders.   4.   Approval by the Superintendent of Insur-
ance of Ohio.

Admittedly adoption of a plan, stated to be in conformity
to the amended law, by the Board of Directors was had on
June 12, 1941, and the notice to stockholders of a meeting on
July 30th, 1941 to approve the plan was mailed on July 14,
1941, both steps prior to the effective date of the amended act
on July 17, 1941.   On July 30, 1941, the Board of Directors
met and again approved the plan, and subsequently the policy
holders have approved the plan, with only the approval of
the Superintendent of Insurance remaining to effectuate the
plan.

We find no merit in the claim that because the Board of
Directors adopted a plan, wherein it was stated to be pur-
suant to the amended act, prior to the effective date of the
law as amended, and gave notice to the stockholders of a meet-
ing to be held subsequent to said effective date for approval
of a plan adopted in conformity to the law, as it would exist
at that time, that its action was premature and void.   On June
12, 1941, existing law sanctioned the adoption of a plan of
mutualization by the board, and the only legal plan and notice
to stockholders that could be given was of a plan in conformity

to the law which the board knew would be in existence at the time of the stockholders' meeting.

B. The claim is made that the plan did not receive a majority vote of the stockholders, for the reason that stock held in a voting trust should have been voted by the trustees thereof instead of by the stockholders themselves, which was done.

Voting trusts, sanctioned in Ohio by §8623-34 GC, are the result of an agreement, whereby the stockholder parts with the voting power, but retains the beneficial ownership of the stock. Subject to the rules of construction applicable to contracts generally, it follows that a court may not enlarge such a contract beyond its fair implications. While such an agreement might grant specific authority for sale by the trustee here, the grant of "full power" to vote the stock for a limited time is clearly inconsistent with a power to destroy the beneficial ownership by sale or otherwise, and clearly appears not to have been within the contemplation of the parties to the agreement. This Court is in accord with the statement contained in Application of Bacon, et al., 287 N. Y. 1; 38 N. E. (2d) 105:

"A 'voting trust' with respect to stock in a corporation creates a separation of the voting power from beneficial ownership of stock, and the state may regulate such separation by exercise of 'police power'."

"A stockholder who deposits his stock under a voting trust parts with the right to vote but retains beneficial ownership of stock, and thereafter neither holders of voting trust certificates nor voting trustees possess all the rights of stockholders, and each group are 'stockholders' for some purposes, but neither group for all purposes, * * *."

"Under a voting trust agreement whereby stock of a corporation issued pursuant to plan of corporation's reorganization under Bankruptcy Act was issued to voting trustees, the power to destroy stock, such as by liquidation of corporation through sale of its assets, would not be implied merely from a power to vote stock, and only by use of clear language could such an extraordinary power be conferred."

See, also: Annotation, 159 A. L. R., 1058 @ 1067, et seq.

C. As to the claim that the Securities Act of 1933 was not followed, this Court is of the opinion from a reading of the Act, that this transaction is not included within the

positive provisions of the Act, and, further, is included within the provisions exempting it from compliance therewith.

In II defendants contend the directors committed a fraud upon the stockholders by concealing from them that the stock had a value in excess of the $40.00 per share, fixed in the plan, thereby invalidating the vote.

It must be borne in mind that in these mutualization proceedings the function of the directors is solely to propose a plan for approval or rejection by the stockholders, including the price per share mentioned therein, and they had no power to bind the stockholders to any part of it. The very purpose of the stockholders' meeting is for discussion and consideration of the whole plan, including any objection made thereto. The record discloses defendants attended that meeting, objected to the price per share and offered resolutions with reference thereto, which were voted down both before and after approval of the plan was voted by the stockholders. It, therefore, appears that the approval as to price was the free approval of the stockholders, and no fraud intervened.

In III, the claim of fraud in the plan, by reason of limiting the price to $40.00 per share and dividends to $1.25 a share, must fail by reason of the voluntary adoption of those provisions by the stockholders. Nor in that plan does there appear any interest of the directors adverse to that of the stockholders calling into question their fiduciary obligations.

Finding no fraud, the claimed inadequacy in price, which we do not find substantiated by the record, provides no ground for the relief prayed for herein.

As pertinent to the circumstances here, we cite **Wick v Youngstown Sheet & Tube Co., 12 Abs, 353**, and quote from page 358:

"The District Court of Montana in Wall et, v Anaconda Copper Mining Company, et., 216 Fed., 242, says on page 246:

" 'Herein the fraud charged must be proven and by legal evidence, and not merely alleged in pleadings and for proof rested upon argument and oratorical endeavor. Finding no fraud in the sale, finding the stockholders' consent was free, it is unnecessary to inquire into the purchase price. That was determined by the holders of two-thirds of Parrot stock; Amalgamated holding a little more than half said stock. They satisfied, none can complain. They could direct a corporate sale for any consideration, even as they individually could make personal sales. Doubtless gross inadequacy might be a circumstance in a fraudulent sale. Aside from that, the dissenting stockholder has a plain, speedy and adequate remedy at law in the appraisal proceedings provided by the statutes,

wherein he secures the value of his shares though the others receive from the sale but a title thereof.'"

In conformity to the principles set forth in **Johnson v Lamprecht, 133 Oh St, 567,** the optional plan of mutualization here adopted by the stockholders, in the absence of fraud, will not be enjoined, and the dissenting minority shareholders are remitted to their statutory rights to obtain the fair cash value of their shares.

IV. The principal claim here is that the operative effect of the plan and statute is unconstitutional, as operating retroactively to defendants, because the amended act was passed subsequent to their acquisition of their stock. The record shows all their stock was acquired in 1940. At that time, the mutualization statutes effective in 1937 were in existence, so that defendants acquired their stock presumably with knowledge thereof, and subject to their provisions. The amended act merely related to word definitions and set up the procedure for dissenting stockholders to obtain the fair cash value of their stock. No vested rights of defendants were affected requiring further discussion of constitutional questions.

In conclusion, we find no evidence in the record sufficient to sustain the charge of fraud and illegality necessary to the granting of equitable relief, which will, therefore, be denied.

A decree may be presented accordingly.

MATTHEWS, PJ, ROSS & HILDEBRANT, JJ, concur in syllabus, opinion & judgment.