The A. & N. FURNITURE & APPLIANCE COMPANY and Herman and Joyce Green, William N. and Selina Appel, Irvin and Doris Rosen, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. 6040.

United States District Court
S. D. Ohio, W. D.
April 24, 1967.

---

Joseph A. Brant, Cincinnati, Ohio, for plaintiffs.

Mitchell Rogovin and Michael E. Marr, Dept. of Justice, Washington, D. C., for the United States.

## MEMORANDUM OPINION

PORTER, District Judge.

This case comes before this Court on cross-motions for summary judgment. The pleadings and affidavits show, and the parties have stipulated, that there is no genuine issue as to any material fact; thus the case is submitted on its merits for a decision on the sole issue, which is one of law. Rule 56, Fed.R.Civ.Proc.

That issue, simply stated, is whether a small corporation, which has elected to be treated as a proprietorship for tax purposes pursuant to subchapter S (§§ 1371–1377 of the Internal Revenue Code), forfeits that election by creating a voting trust with all the stockholders participating.

The facts are these: Petitioners William Appel and his wife and two children, Selina Appel, Doris Rosen, and Joyce Green, own all the outstanding stock of the A. & N. Furniture and Appliance Company, an Ohio corporation (hereinafter referred to as A & N). In 1958, the shareholders of A & N made a proper election to have the income of the corporation taxed to them as individuals in accordance with §§ 1371–1377 of the I.R.C. The corporation has operated under this election for all succeeding years.

On October 2, 1961, the shareholders entered into a voting trust agreement pursuant to the provisions of § 1701.49 of the Ohio Revised Code. This agreement named William Appel as trustee, and gave him the irrevocable right to

vote all the shares of each shareholder for a period of ten years. The agreement took the usual form, with the shareholders depositing their stock certificates with the trustee, and the trustee, in return, issuing them trust certificates. The stated purpose of the agreement was to "insure continuity and stability of policy and management." The parties have stipulated that after October 2, 1961, the stock transfer records of A & N continued to show William and Selina Appel, Joyce Green and Doris Rosen as individual shareholders of the corporation's stock.

The effect of the election under § 1372 (a), I.R.C., was to permit the shareholders of A & N to list as deductions on their personal income tax returns losses that the corporation suffered, just as though the company was a partnership or proprietorship (§ 1374(b), I.R.C.). Accordingly, William and Selina Appel, in their 1961 income tax return claimed a deduction in the amount of $7,309.93 as their proportionate share of the net operation loss of A & N for the year 1961. Herman and Joyce Green listed a deduction of $3,113.59 on their tax return, reflecting their proportionate share of the net operation loss of A & N for the year 1961. Irvin and Doris Rosen claimed a deduction of $3,113.59 in their 1961 return as their proportionate share of the net operation loss of the corporation for 1961.

The Commissioner disallowed these deductions on the ground that the creation of the voting trust prevented A & N from qualifying as a small business corporation under § 1371(a), thus disqualifying the corporation from its election to be taxed as a partnership or proprietorship under § 1372(a).

The government asserts two reasons for this action. First, it claims that voting trust, in effect, created a separate class of stock in violation of § 1371(a) (4). Secondly, the government contends that the voting trust was, in effect, a shareholder other than an individual in violation of § 1371(a) (2).

Section 1371, as it is pertinent to this case, states:

"(a) Small Business Corporations. —For purposes of this subchapter, the term 'small business corporation' means a domestic corporation which is not a member of an affiliated group * * * and which does not—

"(1) have more than 10 shareholders;

"(2) have as a shareholder a person * * * who is not an individual; * * *

"(4) have more than one class of stock."

Any corporation which meets the definition set out in § 1371(a) is entitled to the election to be taxed as a proprietorship or partnership pursuant to § 1372 (a).

Before considering the government's contentions, it is important to determine what the intention of Congress was in permitting such an election. The reports of the Committees of Finance of both the House and the Senate are similar in their declaration of the purpose behind subchapter S (§§ 1371–1377, I.R.C.).

The intention of Congress was to permit small businesses to select the form of organization desired, without the necessity of taking into account major differences in tax consequences. It was intended to be primarily beneficial to those individuals who have marginal tax rates below the 52% corporate rate (or 30% rate in the case of the smaller corporations) where the earnings are left in the business. Where the earnings are distributed (in excess of salary payments), the benefit extends to individuals with somewhat higher tax rates, since in this case a "double tax" is removed. H.R. 775, S.R. 1983, Conference R. 2632, Technical Amendments Act of 1958, P.L. 85–866, 85th Cong., Second Sess., U.S.Code Congressional and Administrative News, Vol. 3, pp. 4791, 4876–4878 (1958); (1958–3 Cum.Bul. 922, 1008). See also Byrne v. C. I. R., 361 F.2d 939, 942 (7 Cir., 1966).

The House Committee of Finance stated: "The provision will also be of substantial benefit to small corporations realizing losses for a period of years where there is no way of offsetting these losses against taxable income at the corporate level, but the shareholders involved have other income which can be offset against these losses. In this connection it should be noted that the President's Cabinet Committee on Small Business and the President in his budget message this last January recommended a general provision of this type for the benefit of small business." Committee Reports on the Technical Amendments Act of 1958, supra.

The effect of the election under subchapter S is to have the income to the corporation treated as ordinary income to the shareholder. Thus, under this provision, current operating losses of the corporation are passed through to the shareholder, and there is no carryover or carryback of operating losses to or from a year with respect to which the election has been made. At the individual level these distributed corporate losses are to be treated in the same manner as any loss which the individual might have from a proprietorship. Committee Reports on the Technical Amendments Act of 1958, supra.

There were two reasons for limiting the right to elect under subchapter S to small business corporations. First, it was thought that only relatively small corporations were essentially comparable to the partnership or proprietorship, where earnings are taxed to owners rather than to the business organization. Thus the restrictions as to the amount of shareholders and to shareholders who are individuals only. Secondly, it was thought that the complexity involved in passing the earnings of a corporation through to its shareholders, where the stock of the corporation is held by a widely diversified group of shareholders, created accounting complications which were too great a burden for the government to bear, and thus the restriction as to one class of stock. Senate Finance Committee Report on the Internal Revenue Code of 1954, 83rd Cong., Second Sess., U.S. Code Congressional and Administrative News, pp. 4752, 5096–5098 (1954).

Thus, it must be understood at the outset that the primary purpose of subchapter S was to permit small businesses to operate in whatever form they saw fit, without having to take into account prohibitive tax consequences. Limitations were placed upon this right in order to insure that only small businesses, whom the Act was intended to benefit, could take advantage of its provisions, and to eliminate great complications in accounting which otherwise might result from the election.

With this in mind, we now look to the contentions of the government. We will first consider the assertion that the voting trust agreement created two classes of stock, taking A & N out of the definition of a small business corporation under § 1371(a) (4).

The theory of the government is that while the voting trust did not technically create two classes of stock, it effectuated the same result by vesting the power to vote in William Appel, and taking this power away from the remaining three shareholders. In substance, William Appel was free to exercise his voting rights just as if he, in form, owned voting stock while the other shareholders held nonvoting stock. Therefore, the voting trust was used as a device to achieve the net effect of a two-class stock structure while retaining the form of a single class of stock.

While the premise of this argument seems to us unimpeachable, the conclusion reached is not entirely correct. The creation of the voting trust, under Ohio law, gave the trustee no interest in the shares subject to the trust, but merely the power to vote them. See § 1701.49, Ohio Rev.Code. The grant of full power to the trustee to vote the stock is inconsistent with a power to destroy the beneficial ownership of the stock, by sale or otherwise. Ohio National Life Ins. Co.

v. Struble, 82 Ohio App. 480, 81 N.E.2d 622, 38 Ohio Op. 107 (Ct. Appeals Hamilton Co., 1948), appeal dismissed, 150 Ohio St. 409, 82 N.E.2d 856 (1948).

Thus the voting trust could only be used to achieve *one of several possible effects* of a two-class stock structure while retaining the form of a single class of stock. The effect achieved is the vesting of the voting power in the trustee, William Appel. The rights of the remaining shareholders to a proportionate distribution of dividends and/or earnings are unaffected. The shareholders are still entitled to the same proportionate benefits from the corporation as they were before the creation of the voting trust.

▆ Thus, the sole question raised by the government's first contention is whether the surrender of voting rights by three of the four shareholders to the fourth shareholder prohibits the corporation from retaining the tax advantages or disadvantages of operating in proprietorship form. In other words, do the limitations as to size and accounting complication imposed by § 1371(a) (4) apply to this situation?

We think not. Clearly, the voting trust does not increase the size of the corporation, and it seems to be just as clear that the trust creates no accounting complications for the government. The shareholders will still be taxed as to their proportionate share of the income going to the corporation, and they will be permitted to deduct the same proportionate amount of the net operating loss of the corporation. Indeed, even the government seemed at a loss to explain just how the voting trust created any accounting difficulties.

Instead the government pointed to regulation 1.1371–1(g), which states:

"Classes of Stock. A Corporation having more than one class of stock does not qualify as a small business corporation * * *. If the outstanding shares of stock of the corporation are not identical with respect to the rights and interest which they convey in the control, profits, and assets of the corporation, then the corporation is considered to have more than one class of stock. Thus a difference as to voting rights, dividend rights, or liquidation preferences of outstanding stock will disqualify a corporation * * *."

It is our opinion that this regulation could not have been intended to apply to voting trusts, and its language does not so indicate. It is more logical to assume that it prevents a corporation which issues two classes of stock (whether they be preferred and common, or voting and nonvoting common, or other classes) from qualifying as a "small business corporation." The issuance of two different classes of stock by a corporation will lead to complications in accounting when the time comes to determine what percentage of profits or losses is allocable to the different shares.

Each class of stock has a different value to the shareholder, concerning his proportionate right to distribution of earnings or deduction of losses. Preferred stock is entitled to a preference in distribution over common stock. Voting common stock has a greater value to the shareholder than nonvoting common, because it is worth more on the market. Hence, the government will have to take into account these value differentiations in determining what proportion of the distributions of the corporation (or in the alternative, the net losses of the corporation) is allocable to each share of stock in a given class.

But the stock issued to the shareholders of A & N is all voting common stock. Each share has the same value to its respective owner as all the other shares. The shares of all four stockholders will bring the same value on the market (here a hypothetical market, for there is no market for A & N shares), because all are subject to the voting trust. Again, each share will command the same proportionate amount of distributions, and will account for the same amount of losses as it did before the creation of the

voting trust. The only difference is in the voting power.

It is clear that Congress was not at all concerned with the respective voting power of each shareholder in a small corporation. They were only concerned that the businesses taking the subchapter S election be those small businesses which Congress intended to benefit, and that no accounting complications result. And, although the regulation (1.1371–1(g)) speaks of "voting rights," it appears clear to this Court that it is directed toward the issuance of two classes of stock, and accounting difficulties resulting therefrom, rather than voting power per se.

The government also cites Revenue Ruling 63–226, which discusses a problem very similar to the one in this case. In that ruling, the Commissioner held that a limited partnership, which had assumed corporate form, was disqualified from a subchapter S election when the two limited partners granted irrevocable proxies to the active partners to vote their stock. The Commissioner construed this action as creating two classes of stock. The situation discussed in the revenue ruling is in, principle, not distinguishable from the case presently before this Court. Therefore, we are inclined to question the validity of the revenue ruling for the following reasons:

Subchapter S was intended to be a benefit to the small businessman. It was, as we mentioned previously, intended to permit the small businessman to operate as a proprietorship, and yet choose the type of technical organization desired, without taking into account prohibitive tax consequences. In the instant case, William Appel obviously desired to operate A & N as if it were a proprietorship while taking advantage of the corporate form of business enterprise (which he was entitled to do under the laws of Ohio) and its resultant advantages, such as limited liability.

One effective way to insure the operation of the business as a proprietorship, although legally in corporate form, was to create a voting trust whereby Mr. Appel had sole control of the business, and his family, who held the remaining shares, received a proportionate income from the business. The creation of the voting trust was also his prerogative under Ohio law, and was a legitimate business choice.

Congress, in enacting the tax laws, is only concerned with the manner in which the income to either the corporation or the Appel family is to be taxed. Since the Appels have chosen to operate the business as if it were a proprietorship, or partnership, Congress has declared that taxes should be assessed to the Appels as though they were the owners of a proprietorship or partnership, so long as the business itself is a small one, and so long as the proprietorship form of taxation does not create accounting complications.

The Commissioner should only be concerned with the internal method of operation of A & N to the extent that it affects either the size of the organization or the difficulty of computing the amount of tax attributable to each shareholder. If the voting trust affects neither of these legitimate concerns of the Internal Revenue Service, then we can see no reason for the formulation of a series of strict technical rules affecting the internal operations of small businesses.

Indeed, not only does the formulation of these rules have no relation to the purpose of the limitations as to size and computation difficulties, but it also takes away a good portion of the congressional grant to the small businessman. If we are to accept the government's position in this case, we would, in effect, be declaring that the small businessman *does not* have the freedom to choose the type of business organization he desires without considering tax consequences, even though he has not come within either of the limitations on the grant given by subchapter S. This Court is not of a mind to take away from the small businessman a benefit (and a very sensible one) which Congress has granted him. Therefore, we must declare the revenue ruling invalid.

Next, we reach the government's contention that the voting trust created a "shareholder" other than a person under § 1371(a) (2), disqualifying A & N from the subchapter S election.

The theory underlying this position is similar to that asserted by the government under § 1371(a) (4). That is, the trustee, in effect, has a "share" which contains all the voting rights, while the other stockholders have nonvoting shares. Hence, the trust itself is a shareholder other than an individual, notwithstanding the fact that a voting trust is not an entity which is capable of holding stock.

While it is easy to see how a voting trust could produce one of the effects of a two-class stock structure, as the government argued above, it is quite another proposition to say that the trust itself is a shareholder. We find this theory to be tenuous at best. However, the government finds support for its assertion in regulation 1.1371–1(e), which states:

"Shareholders Must Be Individuals or Estates. A corporation in which any shareholder is a corporation, trust or partnership does not qualify as a small business corporation. The word 'trust' as used in this paragraph includes * * * voting trusts."

The regulation directly applies to this case. We must assume that the regulation expresses the Commissioner's opinion that a voting trust is capable of being considered a shareholder. If not, there would be no purpose in including the words "voting trusts." With these words included the regulation is clearly erroneous.

This Court can conceive of no reason why, either technically or by implication, a voting trust should be considered a shareholder under § 1371(a) (2). Without restating our reasons as set out in the first part of this opinion, it is clear that the voting trust does not fall within the limitation concerning accounting difficulties.

However, it is more logical to assume that § (2) of 1371(a) was directed toward limiting the size of the corporation, rather than to accounting difficulties. If a corporation were permitted to have as a shareholder another corporation, or a "normal" trust, then it could avoid the limitation of only ten shareholders. Under those circumstances, all the shareholders of the corporation/shareholder would, in effect, be shareholders of the principal corporation. Or, in the alternative, all the beneficiaries of the trust would, in effect, be shareholders of the small corporation. Thus, the corporation would no longer be a "small" one, and no longer entitled to operate as a proprietorship for tax purposes.

This reasoning is supported by Old Virginia Brick Co. v. Commissioner, 367 F.2d 276, 18 A.F.T.R.2d 5750 (4 Cir., 1966), cited by the government. In *Virginia Brick*, an estate, one of several shareholders of a subchapter S corporation was found to have been held open beyond the time necessary for the performance of administrative duties. The Court concluded that the estate had become a testamentary trust. Thus, the corporation, having a trust as one of its shareholders, was disqualified as a small business corporation under subchapter S.

The reasoning in the *Virginia Brick* case does not apply to A & N's voting trust. That trust consisted of the original shareholders as beneficiaries, and added no block of additional shareholders, as did the trust in *Virginia Brick*. In fact, we can find no section in the Internal Revenue Code which treats a voting trust as a separate entity, capable of holding stock and subject to taxation.

This Court is not excluding the possibility that a voting trust may be considered a "shareholder" for some purpose other than the subchapter S election, but it seems clear that Congress did not intend that it be so considered, in reference to § 1371(a), because the creation of the voting trust did not, and could not increase the size of the electing corporation, nor did it create accounting complications.

Thus, the validity of the inclusion of the words "voting trusts" in regulation

1.1371–1(e) is directly in issue. The test of validity of a regulation is well established. Treasury regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes. Commissioner of Internal Revenue v. South Texas Lumber Co., 333 U.S. 496, 68 S.Ct. 695, 92 L.Ed. 831 (1948); Fawcus Machine Company v. United States, 282 U.S. 375, 51 S.Ct. 144, 75 L.Ed. 397 (1931).

 The power of the Commissioner to prescribe regulations for the administration of the federal tax law is not the power to make law, but it is only the power to carry into effect the will of Congress as expressed by the statute. Manhattan General Equipment Co. v. Commissioner, 297 U.S. 129, 56 S.Ct. 397, 80 L.Ed. 528 (1936). A regulation may not alter or amend the revenue law, nor extend a statute or modify its provisions. Campbell v. Galeno Chemical Co., 281 U.S. 599, 50 S.Ct. 412, 74 L.Ed. 1063 (1930); Morrill v. Jones, 106 U.S. 466, 1 S.Ct. 423, 27 L.Ed. 267 (1882). Nor may it take away the rights and privileges which Congress has given. Russell Mfg. Co. v. United States, 175 F.Supp. 159 (U.S.Ct.Claims 1959).

We have no difficulty in finding that that portion of regulation 1.1371–1(e) which refers to voting trusts is clearly inconsistent with the statutes (§§ 1371–1377, I.R.C.) and their purpose, and is, in effect, an amendment of subchapter S forbidding small corporations to qualify for the election if they make use of a voting trust, notwithstanding the fact that they meet all the criteria set out in § 1371(a). To uphold such a regulation would be to hold that a tax may be imposed by regulation, which, of course, the law does not permit. Commissioner of Internal Revenue v. Acker, 361 U.S. 87, 80 S.Ct. 144, 4 L.Ed.2d 127 (1959); United States v. Leslie Salt Co., 350 U.S. 383, 76 S.Ct. 416, 100 L.Ed. 441 (1956).

It should be noted at this point that neither party has brought forth any case directly in point on the two issues before this Court, nor has independent research by this Court disclosed such a case. Only one case has been discovered which touched on the subject of voting trusts in relation to subchapter S. In that case, the government asserted that the plaintiff corporation was disqualified from a subchapter S election because loans from two of the eight shareholders actually were contributions to risk capital, and were preferred over the no-par common stock, thereby creating two classes of stock. The government's second contention was that a voting trust created a second class of stock, and its third contention was that a voting trust created a shareholder other than an individual. Catalina Homes, Inc. v. Commissioner, P–H Memo TC ¶ 64,225 (1959).

The Court in *Catalina Home*s found in favor of the government on its first contention, and did not reach the questions raised concerning voting trusts. However, the Court did state, in relation to the second and third contentions of the government, that "we do deem it appropriate to note our reservations as to whether these arguments represent a reasonable interpretation of the applicable statutory provisions and the intent of Congress in enacting subchapter S."

It must also be noted that this is a case where neither theory of the government serves the purpose of the limitations set out in § 1371(a). However, the primary contention of the government is that we must hold in its favor so that future taxpayers will be able to safely follow the guidelines set out in the regulations and revenue rulings. If this Court were to hold otherwise, the argument goes, taxpayers relying upon the regulations and revenue rulings will find themselves "highly disadvantaged by a body of judicial decisions carving exceptions out of the clear statutory requirements."

To the contrary, this Court is of the opinion that it is the regulation (1.1371–1(e)) and the revenue ruling (63.226) which carve the exceptions out of the clear statutory requirements and the clearly expressed intent of Congress as set out in the legislative history of §§

1371–1377. We can find no justifiable purpose to be served by permitting future taxpayers to rely upon regulations and rulings which are clearly outside the law.

Therefore, plaintiffs' motion for summary judgment is granted, and defendant's cross-motion for summary judgment is denied.