MILLER, Judge.
The election of a board of directors for Lafayette Distributors, Inc., is the subject of this litigation. The issues relate to the validity of the notice given for the shareholders’ meeting; the question of an inoperative voting trusts’ validity as a proxy; the right to vote fractional shares; where a certificate is issued in more than one name, whether or not the shares are divided between the joint owners in determining fractional shares; and the usufructuary’s right to cumulate her fractional share with a fractional share over which she has a usufructuary interest.
This quo warranto proceeding (as authorized by LSA-C.C.P. Arts. 3901, 3902) was brought by Mrs. Beulah Hebert Stansbury, Randy Stansbury and Irby Hebert seeking recognition as the board of directors of Lafayette Distributors, Inc. The trial court ruled that defendants Kenneth M. Stansbury, Marie Frank Elmer and Joan Marie Mouton were elected directors at the August 3, 1970 shareholders’ meeting by a vote of 49 to 48. Plaintiffs appealed. We reverse in part.
Fifty of the corporations’ one hundred shares of common stock are owned by each side. Beulah Hebert Stansbury owns 81/3 shares in her own right (Certificate # 16) and 41% shares “as usufructrix of Andy S. Stansbury and Deborah Stansbury, naked owners.” (Certificate #17.) The remaining 50 shares stand in the name of “J. Barry Mouton as Trustee pursuant to Voting Trust Agreement dated July 29, 1970.” (Certificate #18.)
Prior to the July 29, 1970 transfer to the trustee, these shares were owned 11% by Marie Frank Elmer, 22% by Paul C. Elmer, and 16% by Kenneth M. Stansbury. (Certificate # 6, 7, 8, 13, 14 and 15.)
The defendant board of directors contend that the July 24th notice of the stockholders’ meeting was defective in that the notice was not properly given. They argue that J. Barry Mouton was not an “authorized person” to give notice under LSA-R.S. 12:73 and that the ten days notice of the meeting (required by the same statute) was not given.
If the notice was defective, then the record date for determining stock ownership would be the day before the meeting [LSA-R.S. 12:77, subd. B(l)] and the July 29th voting trust would be operative. Defendants would then have received 50 votes.
The notice states that it was sent on behalf of Kenneth Stansbury and Paul C. Elmer, by their attorney, and at the request of Mrs. Beulah Hebert Stansbury. These three were the last duly elected board of directors. LSA-R.S. 12:73, subd. B authorizes the president or board of directors to call a “shareholders” meeting at any time. Section D of that statute provides that “the authorized person or persons calling a shareholders’ meeting shall cause written notice * * * to be given. * * * ” This notice was caused to be given by “the authorized person or persons.” R.S. 12:73, subd. D.
The July 24th notice of the August 3rd meeting meets the LSA-R.S. 12:73, subd. D requirement that the notice be giv *875 en “at least ten days * * * prior to the day fixed for the meeting.” Defendant contends that in counting the ten day period, we must exclude both the July 24th day of mailing and the August 3rd day of the meeting. We do not agree.
Defendant would exclude the day of mailing under LSA-C.C.P. Art. 5059, and the date of the meeting under LSA-R.S. 12:73, subd. D.
LSA-C.C.P. Art. 5059 provides:
“In computing a period of time allowed or prescribed by law or by order of court, the date of the act, event, or default after which the period begins to run is not to be included. The last day of the period is to be included, unless it is a legal holiday, in which event the period runs until the end of the next day which is not a legal holiday.”
Under this provision, we exclude the July 24th date of the notice, but include the August 3rd date of the meeting, and find the notice to have been timely.
If we apply R.S. 12:73, subd. D to exclude the day of the meeting (since it requires that notice he “at least ten days * * * prior to the day fixed for the meeting.” emphasis added), then we must not exclude the date of the mailing under the specific provision of the same paragraph that “If such written notice is placed in the United States Mail * * * addressed to a shareholder * * * notice shall be deemed to have been given him.” (Emphasis added.)
We therefore affirm the trial court holding that the July 24th notice of the August 3rd meeting was timely and proper. The record date for determining the stockholders’ voting rights was July 23, the day before notice of the meeting was sent. LSA-R.S. 12:77, subd. B(l). The July 29th voting trust agreement was therefore inoperative for the August 3rd shareholders’ meeting.
Although the agreement was inoperative as a voting trust, the agreement contained a proxy in favor of Mouton. Paragraph 6 provided:
“It shall be the duty of the trustee, and it shall have full'power and authority, and it is hereby fully empowered and authorized, to represent the holders of such trust certificates and the stock transferred to the trustee as aforesaid, and to vote upon the said stock, as in the judgment of the trustee may be for the best interest of the company, at all meetings of the stockholders of the said company, in the election of directors and upon any and all matters and questions which may be brought before such meeting, as fully as any stockholder might do if personally present.”
The requirements for a valid proxy are set forth in LSA-R.S. 12:75, subd. C(l) :
“A shareholder shall have the right to cast his vote either in person or, subject to the following provisions, by proxy duly authorized in writing, signed by the shareholder and filed with the secretary at or before the meeting.”
The voting trust gave Mouton the power to represent the shareholders. It was in writing and filed with the secretary before the meeting. It was a valid proxy.
We turn now to consider the shareholder’s rights to vote fractional shares. LSA-R.S. 12:51, subd. D provides that “Unless otherwise provided in the articles, the holder of a fractional-share certificate shall * * * have all rights of a shareholder except voting rights.”
Under this provision, Mouton voted as proxy 11 shares owned by Marie Frank Elmer, 22 shares by Paul C. Elmer, and 16 shares by Kenneth M. Stansbury, for a total of 49 shares. The fractional share owned by each shareholder cannot be voted.
*876 Applying this rule to plaintiff appellant Beulah Hebert Stansbury, she lost the right to vote her % fractional-share. The trial court held (erroneously, we hold) that she could only vote 40 shares as usufruc-tuary of her two children’s 41 % shares. This result was reached by holding that each of Mrs. Stansbury’s children owned 20% shares, and she lost the right to vote % of a share for each child.
We hold that in determining the right to vote fractional-shares, the record books of the corporation control. For voting purposes, it makes no difference whether these 41% shares are owned by two people or by forty-one people. In either event, 41 shares can be voted and the % share cannot be voted. R.S. 12:51, subd. D.
Appellant argues that Mrs. Stansbury had the right to vote 50 shares; that she could cumulate her % fractional-share with her usufruct over her children’s % fractional-share, to the end that she was able to vote this share. LSA-R.S. 12:75, subd. E and 12:1, subd. J specifically grant the usufructuary the right to vote shares registered in her name as usufructuary “in person or by proxy for all purposes.”
The argument is persuasive, but we find that R.S. 12:51, subd. D which denies voting right to “the holder of a fractional-share certificate”, requires a contrary holding. This result is supported by LSA-R.S. 12:75, subd. A which gives “ * * * each shareholder of record * * * one vote for each share standing in his name on the books of the corporation:”.
Forty-nine votes were cast for plaintiff board of directors and forty-nine votes for defendant board of directors. Since there was a tie, plaintiffs are entitled to judgment declaring defendants not to have been elected at the August 3, 1970 shareholders’ meeting.
The judgment of the trial court is reversed in part. All votes taken at the August 3, 1970 shareholders’ meeting were tied forty-nine to forty-nine. The election of a board of directors on that date is declared null and void and is set aside. Costs of court both at the trial and on appeal are assessed to defendants-appellees.
Reversed in part, and rendered.