**LAFAYETTE DISTRIBUTORS, INC.**

v.

**UNITED STATES of America.**

**Civ. A. No. 74–897.**

United States District Court,
W. D. Louisiana,
Alexandria Division.

July 23, 1975.

Edwin K. Hunter, Camp, Carmouche, Palmer, Carwile & Barsh, Lake Charles, La., for plaintiff.

Donald E. Walter, U. S. Atty., Shreveport, La., Steven Shapero, Atty., Tax Div., Dept. of Justice, Washington, D. C., for defendant.

## OPINION

NAUMAN S. SCOTT, District Judge.

This is a civil action for the refund of deficiency income taxes totaling $92,058.76 for the calendar year 1970. Jurisdiction is present under the provisions of 28 U.S.C. § 1346(a).

The largest part of this tax assessment was based on a determination by the Internal Revenue Service that Lafayette Distributors, Inc. lost its Sub-Chapter S status as a result of the execution of a "voting trust" agreement by rightful shareholders seeking control of the corporation. The remainder of the assessment results from (1) the disallowance of deductions for admission tickets to an area racetrack purchased by plaintiff for its customers and other business associates; (2) the disallowance of a deduction for alleged unreasonable salaries paid to officers-employees; and (3) the disallowance of a deduction for contributions to a qualified pension plan. It was agreed by the parties and accepted by the Court that the Sub-Chapter S issue should be severed and submitted on stipulations and decided first, since its resolution in favor of the taxpayer would moot the other questions.

Essentially, this lawsuit poses the question whether a corporation forfeits its status as an electing small business corporation under 26 U.S.C. § 1371 *et seq* (Sub-Chapter S) where one or more of its shareholders establish a voting trust.

The following facts are established by stipulation.

Lafayette Distributors, Inc. (the taxpayer) is a Louisiana corporation organized on June 14, 1973. It is in the business of distributing beer in and around Lafayette, Louisiana. On January 24, 1968, pursuant to Section 1372(a) of the Internal Revenue Code, taxpayer elected,

with the consent of all its shareholders, to be treated as a small business corporation for income tax purposes, and for the calendar year 1968 and 1969, taxpayer was taxed in accordance with the Sub-Chapter S. However, by 1970, two factions had developed among the shareholders, and a struggle erupted for control over taxpayer's board of directors. The factions may be depicted as follows:

| I | | |
|---|---|---|
| A) Beulah H. Stansbury | 8⅓ | |
| B) Beulah H. Stansbury— usufructuary for Randy S. and Deborah A. Stansbury | 41⅔ | |
| | **50 Shares** | |

| II | | |
|---|---|---|
| A) Kenneth M. Stansbury | 16⅔ | |
| B) Paul C. Elmer— Community property— spouse Marie F. Elmer | 22% | |
| C) Marie F. Elmer— community property— spouse Paul C. Elmer | 11⅙ | |
| | **50 Shares** | |

By virtue of LSA–R.S. 12:51 [1] neither faction could vote more than 49 shares and neither faction could obtain control of the taxpayer. As a result, a deadlock ensued.

In July of 1970, the members of the second faction set forth above felt they could obtain effective control over taxpayer by establishing a voting trust, and, thereby, coalescing the fractional shares and giving a voting trustee the power to vote 50 shares rather than the 49 which could be voted individually. Consequently, by the terms of the voting agreement dated July 29, 1970, and in accordance with the applicable Louisiana law, LSA–R.S. 12:78, the 50 shares subject to the voting trust were surrendered to the corporation, cancelled and reissued in a new certificate to the name of "J. Berry Mouton as trustee pursuant to voting trust agreement dated July 29, 1970." [2] The trustee thereafter executed and delivered voting trust certificates to the transferors.

On audit of the taxpayer's 1970 small business corporation income tax return (Form 1120–S) the Commissioner of Internal Revenue determined that the taxpayer's Sub-Chapter S election was terminated when the voting trust agreement was entered into, thus making the income of the corporation taxable to the corporation rather than to its shareholders. Accordingly, deficiency income taxes totaling $92,058.76 were charged against the taxpayer for 1970. Taxpayer paid the charged deficiency and filed a Form 843, Claim for Refund, and ultimately, filed this complaint on September 24, 1974.

A corporation that elects under Subchapter S is treated as a regular corporation in all respects except for tax purposes. Tax-wise, the effect of an election under Section 1372(a) is to permit the shareholders of the electing corporation to list as deductions on their personal income tax returns losses that the corporation sustained just as though the corporation were a partnership or a proprietorship. The income of the corporation, whether distributed or not to the shareholder, is taxed to him in accord-

---

1. LSA–R.S. 12:51 "Classes of Stock Fractional Shares" provides in pertinent part: "Unless otherwise provided in the articles, the holder of a fractional-share certificate shall . . . have all the rights of a shareholder except voting rights."

2. Shareholder litigation ensued as a result of the voting trust. See *Hebert v. Stansbury*, 248 So.2d 873 (La.App. 3rd Cir. 1971).

ance with his particular income bracket. The Commissioner disallowed the Sub-Chapter S tax treatment on the grounds that the creation of a voting trust rendered the corporation ineligible to qualify as a small business corporation under Sub-Chapter S. Section 1371(a) of the Internal Revenue Code provides:

"For purposes of this subchapter, the term 'small business corporation' means a domestic corporation which is not a member of an affiliated group (as defined in 1504) and which does not—

(1) have more than 10 shareholders;

(2) have as a shareholder a person (other than an estate) who is not an individual;

(3) have a nonresident alien as a shareholder; and

(4) have more than one class of stock."

The Commissioner charges that the voting trust was, in effect, a shareholder other than an individual in violation of Section 1371(a)(2).

By enacting the Sub-Chapter S legislation, the intention of Congress was to permit small businesses to select the form of organization desired, without the necessity of taking into account major differences in tax consequences. H. R. 775, S.R.1983, Conference R. 2632, Technical Amendment Act of 1958, P.L. 85-866, 85th Cong., 2nd Sess., 3 U.S. Code Congressional & Administrative News pp. 4791, 4876-4878 (1958). However, the Congress placed limitations on Sub-Chapter S tax treatment by prescribing eligibility requirements. Congressional reasoning for this action is recapitulated by the District Court in *A & N Furniture & Appliance Co. v. United States*, 271 F.Supp. 40, 43 (S.D. Ohio 1967):

"First, it was thought that only relatively small corporations were essentially comparable to the partnership or proprietorship, where earnings are taxed to owners rather than to the business organization. Thus the restrictions as to the amount of shareholders and to shareholders who are individuals only. Secondly, it was thought that the complexity involved in passing the earnings of a corporation through to its shareholders, where the stock of a corporation was held by a widely diversified group of shareholders, created accounting complications which were too great a burden for the government to bear, and thus the restriction as to one class of stock. Senate Finance Committee Report on the Internal Revenue Code of 1954, 83rd Cong., 2nd Sess., U. S. Code Congressional & Administrative News, pp. 4752, 5096-5098 (1954)."

Examining the issue in this light, it is the contention of the Commissioner that the taxpayer terminated its election under Section 1372(a) to be taxed as a Sub-Chapter S corporation when it issued a certificate representing 50 shares of its stock to the trustee of the voting trust created on July 29, 1970. Hence, the trust itself became a shareholder other than an individual. The Commissioner places his reliance on Treasury Regulations on Income Tax, Sections 1.-1371-1(d)(1) and (e), 26 C.F.R. §§ 1.-1371-1(d)(1) and (e), which state that a trust, including a voting trust, is not an individual under Section 1371(a)(2) of the Internal Revenue Code, *supra*. Section 1.1371-1(d)(1) "Number of Shareholders" provides:

"A corporation does not qualify as a small business corporation if it has more than 10 shareholders. Ordinarily the persons who would have to include in gross income dividends distributed with respect to the stock of a corporation are considered to be the shareholders of the corporation. Persons for whom a stock in a corporation is held by a nominee, agent, guardian, or custodian, would generally be considered shareholders of a corporation. If stock is owned by a trust which is subject to the provisions of Sub-Chapters D, F, H or J, or Chapter

1 of the Code, or by a *voting trust*, the trust is considered a shareholder even though the dividends paid to the trust are includable directly in the income of the grantor or some other person." (Emphasis ours).

Section 1.1371–1(e) "Shareholders Must be Individuals or Estates" provides:

"A corporation in which any shareholder is a corporation, trust or partnership does not qualify as a small business corporation. The word 'trust' as used in this paragraph includes all trusts, subject to the provisions of Sub-Chapter D, F, H or J (including Sub-part E thereof) Chapter 1 of the Code and *voting trusts*. Thus, even though the grantor is treated as the owner of all or any part of a trust, the corporation in which such trust is a shareholder does not meet the qualifications of a small business corporation." (Emphasis ours).

The taxpayer argues (1) that the regulations relied upon by the Commissioner are in conflict with the Congressional intent of the Internal Revenue Code of 1954; (2) that one court, in dealing with the same issue, has held Treasury Regulation 1.1371–1(e), as it applies to a voting trust, invalid, *A & N Furniture & Appliance Co. v. United States, supra*; and (3) that the voting trust certificate holders enjoy "beneficial ownership" of the shares in the voting trust, and, accordingly, they rather than the trustee, are the shareholders for purposes of Sub-Chapter S eligibility.

The jurisprudence appears to be on the side of the taxpayer in this case. In a Tax Court memorandum decision, *Catalina Homes, Inc. v. Commissioner*, 23 T.C.M. 1361 (1964), which ultimately held that certain shareholder advances constituted a second class of stock, invalidating a Sub-Chapter S election, the judge made the following observation, albeit dicta:

"Because of our determination on the first issue herein it will not be necessary for us to consider respondent's contention that (1) the shares of stock in voting trusts constitute a second class of stock because of their loss of voting power, and (2) that the voting trust are to be considered shareholders of petitioner so as to disqualify it under Section 1371(a)(4). However, we deem it appropriate to note our reservations as to whether these arguments represent a reasonable interpretation of the application of statutory provisions and the intent of Congress in enacting Sub-Chapter S."

Three years after the *Catalina Homes, Inc.* decision, a Federal District Court addressed itself squarely to the issue declined in that Tax Court memorandum decision: see *A & N Furniture & Appliance Co. v. United States*, 271 F.Supp. 40 (S.D.Ohio 1967). In *A & N*, the shareholders, following a valid Sub-Chapter S election, entered into a voting trust agreement in accordance with the Ohio Revised Code, Section 1701.49. The shareholders deposited their stock certificates with the trustee, and the trustee, in return, issued them trust certificates. The agreement designated one of the shareholders as voting trustee and vested him with the irrevocable right to vote the shares for a period of ten years. The Commissioner judged the Sub-Chapter S election invalid on the grounds that (1) the voting trust created a second class of stock in violation of Section 1371(a)(4); and (2) the voting trust was, in effect, a shareholder other than an individual in violation of Section 1371(a)(2). The Commissioner relied on Treasury Regulation 1.1371–1(g) which indicated that a difference in voting rights would create a different class of stock, and on Revenue Ruling 63–226, which construed the granting of an irrevocable proxy as creating two classes of stock. The *A & N* Court held both the Regulation and the Revenue Ruling invalid, insofar as they considered the establishment of a voting trust tantamount to the creation of a second class of stock. The Tax Court similarly held Section 1.1371–1(g) and Revenue Ruling 63–226 invalid to the extent that they

hold a second class of stock is created unless all of the shares outstanding are identical as to all voting rights. *Parker Oil Co., Inc. v. Commissioner*, 58 T.C. 985 (1972). Ultimately, the Commissioner acquiesced and revoked Revenue Ruling 63–226. See Revenue Ruling 73–611.

In the case before us today, the Commissioner does not contend that the establishment of the voting trust created a new class of stock. However, with respect to the second contention in *A & N* i. e., that the voting trust became, in effect, a shareholder other than an individual, the Commissioner urges the same argument on us today. That argument was rejected by the Court in *A & N*.

In *A & N*, as in this case, the Commissioner placed reliance on Treasury Regulation 1.1371–1(e), *supra*. In this regard the *A & N* Court stated:

"The regulation directly applies to this case. We assume that the regulation expresses the Commissioner's opinion that a voting trust is capable of being considered a shareholder. If not, there would be no purpose in including the words 'voting trusts'. With these words included the regulation is clearly erroneous."

The Court reasoned further that the voting trust added no block of additional shareholders and did not increase the size of the electing corporation.

"In fact, we can find no section in the Internal Revenue Code which treats a voting trust as a separate entity, capable of holding stock and subject to taxation."

On the other hand, the Commissioner, in his brief, makes reference to only two cases where a trust became a shareholder of an electing small business corporation in which the Sub-Chapter S election was subsequently terminated. *Fulk & Needham, Inc. v. United States*, 411 F.2d 1403 (4th Cir. 1969); *Old Virginia Brick Co. v. Commissioner*, 367 F. 2d 276 (4th Cir. 1966). These cases may be distinguished, however, on grounds that they both involve testamen-

tary trusts rather than voting trusts. The distinction is significant because the testamentary trust has long been recognized as a taxable entity. Case law, then, clearly favors the taxpayer.

In addition to contending that the entire rationale of the *A & N* decision is erroneous, the government urges, in the alternative, that the factual circumstances in each case are significantly different. The voting trust which was the subject of consideration in the *A & N* decision was never a record "shareholder" of the corporation. Rather, the books and records of the corporation reflected that the individuals whose shares were placed in the voting trust were nevertheless the shareholders of record, owning both legal and beneficial title to the shares. *A & N, supra*, at 42. With respect to Lafayette Distributors, the shares subject to the voting trust agreement were surrendered to the corporation which reissued them in the name of the trustee.

As for eligibility under Sub-Chapter S, this is a distinction without a difference. The Ohio Revised Code, Section 1701.49 sets forth the procedure whereby the participants to a voting trust agreement may deposit their share certificates with the trustee who may issue to them, in return, voting trust certificates. There is no requirement that the share certificates be surrendered to the corporation and reissued to the trustee unless the parties choose to adopt such a procedure. The procedure set forth in LSA–R.S. 12:78 is not nearly as flexible. According to its terms, Section 78 requires that

"Certificates of shares transferred to a trustee or trustees *shall* be surrendered and cancelled, and new certificates therefore issued in the name of the trustee or trustees." (Emphasis ours).

In *A & N* and here, the end product is the same: A voting trust is established. However, in this case, the Commissioner sides with the literal and formal difference from the *A & N* decision: That the

voting trustee is listed as the record shareholder rather than the holders of the voting trust certificates, and, thus, the recording of the trustee in the corporate records makes him a shareholder other than an individual for Sub-Chapter S purposes.

The Commissioner's logic places form above substance. Although the voting trustee is the record holder (as required by Louisiana law), fundamental theories of taxation, the jurisprudence, and the regulations themselves, indicate that the trust certificate holders are the true shareholders for eligibility purposes under Sub-Chapter S.

■■ The courts and Congress have devoted much attention to the question "Who pays the tax?" One underlying principle has emerged, the person who receives the benefit generally bears the tax. Any effort to elevate a voting trust to a tax significant arrangement subverts this principle. Voting trust certificate holders, and not the voting trustee receive the benefits of distributions and must declare such as income, personal to them, for income tax purposes. Traditionally, courts have looked to the beneficial owner in order to ascertain who has the tax liability. In the Tax Court decision *Alfred N. Hoffman,* 47 T.C. 218 (1967), aff'd 391 F.2d 930 (5th Cir. 1968), a shareholder sold her stock to the taxpayer but continued to hold it in escrow to secure payment of the purchase price. The purchaser (taxpayer) consented to a Sub-Chapter S election, but she did not. The Tax Court held that her consent was unnecessary.

"Our conclusion that beneficial ownership of the stock, as opposed to technical legal title thereto, is critical in determining who is a shareholder, is supported by the regulations as well as the general legislative purpose underlying Sub-Chapter S." *Alfred N. Hoffman, supra,* at 223.

The Tax Court reasoned that the taxpayer, as purchaser of the stock, had all beneficial interest in the stock in question. It was he who ran the business of the corporation and he who was to enjoy "all the fruits of the enterprise." *Alfred N. Hoffman, supra,* at 232. And, finally, "it was he . . . who was chargeable with any undistributed earnings" under a valid Sub-Chapter S election. *Alfred N. Hoffman, supra,* at 235.[3]

The principles in *Hoffman* are not inapposite here. The voting trustee holds the shares in name and has only technical legal title thereto. However, the trustee's incidents of ownership are limited, by the terms of the agreement, to the exercise of voting rights only. The trustee is entitled to no fruits of the enterprise. Should Lafayette Distributors, Inc. experience a banner year the trustee would enjoy no fruits attributable to those earnings. Likewise, undistributed income would not be taxed to the trustee either.

The concept of beneficial ownership is logically applicable to the facts in this case and is, furthermore, consistent with the regulations promulgated by the service itself. Treasury Regulation 1.1371–1(d)(1), the crux of the Commissioner's case, provides, in part:

"A corporation does not qualify as a small business corporation if it has more than 10 shareholders. Ordinarily, the *persons who would have to include in gross income dividends* distributed with respect to the stock of the corporation *are considered to be*

---

3. Other cases supporting the theory of beneficial ownership are:
*Pacific Coast Music Jobbers, Inc. v. Commissioner,* 457 F.2d 1165 (5th Cir. 1972), wherein the Commissioner successfully urged a theory of beneficial ownership; *Clarence L. Hook,* 58 T.C. 267 (1972), where the Tax Court held that the transfer of stock was not bonafide, and beneficial interest remained in the transferror, and, therefore, such transfer was insufficient to terminate the corporation's Sub-Chapter S election. See also: Revenue Rulings 66–116 and 70–615.

*the shareholders of the corporation . . .* ". (Emphasis ours).

Voting trust certificate holders and not the voting trustee, receive the benefit of such distributions and must declare these receipts in their gross income for tax purposes. Thus, it would seem the Commissioner is assuming a position in this case which is adverse to the regulation itself. Yet further inquiry reveals the regulation exhibits internal inconsistency, for having correctly stated the basic legal principle, it then purports to except voting trusts from its application.

It is this exception that places this aspect of the regulation outside the bounds of congressional intent. A voting trust does not create additional accounting problems—the beneficiaries are still required to declare corporate earnings as their income; nor does the voting trust increase the size of the electing corporation, *A & N, supra,* at 46.

The Commissioner's reliance on Treasury Regulation 1.1371–1(d)(1) illustrates the internal inconsistency. In his brief, he stated:

"The trust held record to 50 shares of its stock. Yet, even though there were only three beneficiaries of the trust at its initiation, the trust certificates reflecting beneficial ownership of the shares were themselves freely transferrable. Accordingly, it would have been possible to expand the number of beneficiaries of the trust. But the records of the corporation would reflect only that 50 of its shares were held by a voting trust. Thus, the conclusion that a voting trust has no tax significance for Sub-Chapter S purposes will generally necessitate a supplemental investigation of that trust's books and records simply to *discover the true number of shareholders in the subject corporation.*" (Emphasis ours).

It must be concluded, then, that the Commissioner considers the holders of the voting trust certificates, as well as the trustee, to be shareholders for Sub-Chapter S purposes. By deduction, it is possible for the 50 original shares to be transferred in such a way that they become 51 shares in the hands of 51 shareholders by simply transferring the voting certificates to 50 separate individuals. The 51st share would be that held by the trustee. As reviewed earlier, there is little doubt that the creation of a voting trust does not establish a second class of stock. Similarly, there is no evidence that the corporation issued another or an additional share of stock. The certificate held by the trustee indicates "fifty shares". Therefore, one must wonder where the 51st share comes from. It is possible that the Commissioner did not intend this implication, but, nevertheless, such an anomalous result belies the incongruity of his position that suggests on the one hand that the voting trustee is the shareholder and on the other that the holders of the voting certificates are also shareholders. This illustrates that the (voting) trustee cannot be a shareholder for Sub-Chapter S purposes. The beneficial owners remain the shareholders for Sub-Chapter S purposes despite the fact that the trustee is the record holder.

Fundamentally, this case resolves itself into a question of form versus substance. As a matter of form, in compliance with Louisiana law, the voting trustee is the record holder of the shares. For this reason, the Commissioner asserts the literal conclusion that the trustee is thus a shareholder for Sub-Chapter S purposes. Substantively, the voting trust is a mechanism for the pooling of shareholder votes. It is not a taxable entity. It has no taxpayer identification number, and it is the recipient of no income. Substantively it is indistinguishable from an irrevocable proxy to which the Commissioner acquiesced in Revenue Ruling 73–611. It serves the exact same purpose, and has the exact same effect as the voting trust in *A & N, supra.*

The Commissioner's reliance on Treasury Regulations 1.1371–1(d)(1) and (e) places the validity of these regulations, to the extent that they refer to

"voting trusts" directly in issue. We are well aware that Treasury Regulations must be sustained unless unreasonable and plainly inconsistent with the Revenue Statutes. *Commissioner of Internal Revenue v. South Texas Lumber Co.*, 333 U.S. 496, 68 S.Ct. 695, 92 L.Ed. 831 (1948); *Fawcus Machine Co. v. United States*, 282 U.S. 375, 51 S.Ct. 144, 75 L.Ed. 397 (1937). Yet, for the foregoing reasons we must concur with the reasoning of the *A & N* court and conclude that the portions of Regulation 1.1371–1(d) and (e) which refer to voting trusts, are clearly inconsistent with the statutes and unreasonable in their application.

Accordingly, judgment is hereby rendered in favor of the taxpayer who should submit a judgment for execution within ten days.