AMERICAN NURSERYMAN PUBLISHING CO., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6150–78.     Filed November 17, 1980.

*Loren E. Juhl, Thomas E. Swaney,* and *Robert A. Malstrom,* for the petitioner.

*Allan E. Lang,* for the respondent.

OPINION

SIMPSON, *Judge:* The Commissioner determined a deficiency of $22,664.55 in the petitioner's Federal income tax for 1975. The only issue to be decided is whether an election by the petitioner to be treated as a small business corporation under subchapter S of the Internal Revenue Code of 1954[1] was terminated when a

---

[1]All statutory references are to the Internal Revenue Code of 1954 as in effect in 1975, unless otherwise indicated.

shareholder transferred her stock to a revocable trust of which she was the trustee and sole beneficiary during her life and when such transfer was later held by an Illinois court to have been void ab initio.

All of the facts have been stipulated, and such facts are so found.

The petitioner, American Nurseryman Publishing Co., an Illinois corporation, had its principal place of business in Chicago, Ill., at the time of filing its petition in this case. It filed its Federal income tax return for 1975 with the Internal Revenue Service Center, Kansas City, Mo.

The petitioner is the publisher of American Nurseryman magazine. On January 1, 1969, the petitioner made a valid election to be taxed as a small business corporation under subchapter S (secs. 1371 et seq.). Since then, it has filed small business corporation income tax returns each year.

On July 11, 1975, Colleen B. Kilner, a shareholder of the petitioner, executed a declaration of trust in which she transferred securities owned by her, including 223 shares in the petitioner, to herself as trustee. The declaration named Mrs. Kilner as the sole beneficiary during her lifetime, empowered her to revoke or amend the instrument at will during her lifetime, and provided for the distribution of the trust assets upon her death. Also, the declaration appointed the Continental Illinois National Bank & Trust Co. of Chicago (the bank) to succeed Mrs. Kilner as trustee on her death. On August 11, 1975, the ownership registration of the 223 shares in the petitioner was changed from Colleen B. Kilner to Colleen B. Kilner, trustee under declaration of trust dated July 11, 1975.

Mrs. Kilner died testate on May 16, 1976. Her will devised all her property, except personal effects and household goods, to the successor trustee, the bank, to be distributed in accordance with her declaration of trust. Her will also appointed the bank as executor of her estate.

Shortly after Mrs. Kilner's death, the bank filed a citation proceeding[2] in the Circuit Court of Cook County, Ill., seeking to

---

[2] Ill. Ann. Stat. ch. 3, sec. 183 (Smith-Hurd 1978 Supp.), provides:

"Upon the filing of a verified petition therefor, the court shall order a citation to issue for the appearance before it of any person whom the petitioner believes (1) to have concealed, converted, or embezzled or to have in his possession or control any personal property, books of account, papers, or evidences of debt or title to lands which belonged to a person whose estate is

have declared void Mrs. Kilner's transfer of her stock in the petitioner in trust. As executor and petitioner in the proceeding, the bank alleged that:

Respondent, CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO, as Trustee of the Colleen B. Kilner Trust dated July 11, 1975, has in its possession and control, personal property belonging to decedent which Respondent should be ordered to deliver to the Petitioner as Executor of this estate.

\* \* \* \* \* \* \*

(3) Respondent is in possession and control of such property as a result of a transfer made by decedent on July 11, 1975. \* \* \* such transfer was made by decedent as a result of a mistake of law and fact concerning the nature of such property and the consequences of such transfer. Due to her mistake, decedent did not intend the transfer which was made. Accordingly, the transfer should be declared null and void, and such property should be returned to decedent as of the date of such transfer.

In support of its allegations, the bank attached to its petition an affidavit of the attorney who advised Mrs. Kilner to execute the declaration of trust. In such affidavit, the attorney stated that neither Mrs. Kilner nor the petitioner advised him that the petitioner was a small business corporation taxable under subchapter S, that he believed that Mrs. Kilner was unaware that such a corporation may not have a trust as a shareholder, and that if he had known that the petitioner was taxable under subchapter S, he would not have advised her to transfer the stock in the petitioner to the trust.

The bank, as trustee and respondent in the citation proceeding, answered the petition by denying knowledge of any reason why the 223 shares should be transferred to the bank as executor and by demanding "strict proof" of the allegations in the petition. On October 6, 1976, the Circuit Court entered an order in which it found "that decedent's transfer of such shares was due to a material mistake which was not the result of her own negligence and that no persons will be adversely affected by

---

being administered in that court or which belongs to his estate or to his executor, administrator, guardian, or conservator or (2) to have information or knowledge withheld by the respondent from the executor, administrator, guardian, or conservator and needed by the executor, administrator, guardian, or conservator for the recovery of any property by suit or otherwise. The citation shall be served not less than 10 days before the return day designated therein and shall be served and returned in the manner provided for summons in civil cases. \* \* \*"

correcting such mistake," and ordered that "[the bank], as Trustee of the Colleen B. Kilner Trust dated July 11, 1975, shall deliver the 223 shares of American Nurseryman Publishing Co. common stock which are subject to its possession and control to * * * [the bank] as Executor of the Will of Colleen B. Kilner, deceased."

In its small business corporation income tax return for 1975, the petitioner reported that it was not liable for any tax. In his notice of deficiency, the Commissioner determined that the petitioner's election to be treated as a small business corporation was terminated in 1975 because the trust created by Mrs. Kilner became a shareholder of the petitioner in that year.

If a corporation elects to qualify under subchapter S (that is, becomes a subchapter S corporation), it is not taxable on its income, but such income is taxable to its shareholders. Secs. 1372(b), 1373. An election to become a subchapter S corporation is terminated whenever the corporation ceases to qualify as such. Sec. 1372(e)(3). The issue to be decided in this case is whether the transfer of stock by Mrs. Kilner in trust caused the election by the petitioner to terminate under section 1372(e)(3).

The Commissioner takes the position that as the law stood in 1975, any transfer of stock in trust caused an election under subchapter S to terminate, and he relies on section 1.1371–1(e), Income Tax Regs. He maintains that Mrs. Kilner made a transfer of her stock in trust and that the tax consequences of such transfer cannot be changed retroactively. On the other hand, the petitioner first takes the position that the trust never owned the stock in the petitioner since "the net effect" of the State court order "was that Colleen B. Kilner remained a shareholder of the petitioner in her individual capacity until her death on May 16, 1976." In the alternative, the petitioner argues that in deciding whether there has been a transfer of stock for purposes of applying the provisions of subchapter S, the courts are guided by the substance of a transaction, not its form, and that in substance, Mrs. Kilner remained the owner of the stock in the petitioner even if we disregard the order of the State court. It urges us to declare the regulations invalid to the extent that they are inconsistent with its position.

At the outset, there is no merit in the petitioner's argument that this Court should give retroactive effect to the State court order voiding Mrs. Kilner's transfer of her stock in trust. There

is no dispute that in 1975 Mrs. Kilner desired to transfer her stock in trust, and there is no dispute that in 1975 she actually transferred her stock in a valid and completed transaction. As between Mrs. Kilner and the trust, the State court order may have had retroactive effect, but this Court and the Courts of Appeals have consistently expressed the view that "not even judicial reformation can operate to change the federal tax consequences of a completed transaction." *Van Den Wymelenberg v. United States*, 397 F.2d 443, 445 (7th Cir. 1968); see *Emerson Institute v. United States*, 356 F.2d 824 (D.C. Cir. 1966), cert. denied 385 U.S. 822 (1966); *Piel v. Commissioner*, 340 F.2d 887 (2d Cir. 1965), affg. a Memorandum Opinion of this Court; *Sinopoulo v. Jones*, 154 F.2d 648 (10th Cir. 1946); *Estate of Hill v. Commissioner*, 64 T.C. 867 (1975), affd. in an unpublished opinion 568 F.2d 1365 (5th Cir. 1978); *Davis v. Commissioner*, 55 T.C. 416, 428 (1970); *M. T. Straight Trust v. Commissioner*, 24 T.C. 69 (1955), affd. 245 F.2d 327 (8th Cir. 1957); *Van Vlaanderen v. Commissioner*, 10 T.C. 706 (1948), affd. 175 F.2d 389 (3d Cir. 1949); *Daine v. Commissioner*, 9 T.C. 47 (1947), affd. 168 F.2d 449 (2d Cir. 1948); *Eisenberg v. Commissioner*, 5 T.C. 856 (1945), affd. 161 F.2d 506 (3d Cir. 1947), cert. denied 332 U.S. 767 (1947); but see *Flitcroft v. Commissioner*, 328 F.2d 449 (9th Cir. 1964), revg. 39 T.C. 52 (1962).

In *M. T. Straight Trust v. Commissioner, supra,* this Court faced the issue of whether a certain instrument had created three trusts or only one trust. By its terms, the instrument had created only one trust, but subsequent to the years in issue, the settlor had sought and received an order of a State court reforming the instrument to create three separate trusts. The order was made retroactive to the time of the execution of the instrument. We held that the order could not be given retroactive effect for Federal tax purposes. We recognized that "There are numerous cases in which the construction or interpretation of an instrument by a decision of a State court involving the taxpayer and rendered subsequent to the taxable period involved has been relied upon to determine the tax consequences of the document," but we stated that "In the instant case, however, the reformation decree is not a determination of the legal effect of the original trust instrument under local law, nor does it purport to be such a determination. On the contrary, it alters and modifies the instrument." 24 T.C. at 74. We observed

that as a general rule a reformation of an instrument has retroactive effect as between the parties to the instrument, but not as to third parties who previously acquired rights under the instrument. On that basis, we held that for Federal tax purposes, the reformation was effective only from the date thereof.

The present case is appealable to the Seventh Circuit, and that court reached a similar result in *Van Den Wymelenberg v. United States, supra.* In that case, the taxpayers created a trust for their grandchildren on July 6, 1961, and made gifts of property to the trust. In 1962, they filed gift tax returns in which they reported the gifts to the trust and claimed annual exclusions under section 2503. In 1963, they were notified by the IRS that the exclusions were to be disallowed because the gifts did not qualify under section 2503. Subsequently, the taxpayers executed, "as of July 6, 1961," a corrected trust agreement which purported to bring the original agreement into conformity with section 2503. The Seventh Circuit agreed with the IRS that under the original agreement the gifts did not qualify under section 2503. The court went on to hold that the reformation did not have retroactive effect for Federal tax purposes. The taxpayers relied upon several decisions of the State courts purporting to hold that an instrument may be voluntarily reformed by the parties thereto when, through mistake, the instrument does not embody the intent of the parties, but the court stated:

not even judicial reformation can operate to change the federal tax consequences of a completed transaction.

As to the parties to the reformed instrument the reformation relates back to the date of the original instrument, but it does not affect the rights acquired by non-parties, including the Government. Were the law otherwise there would exist considerable opportunity for "collusive" state court actions having the sole purpose of reducing federal tax liabilities. Furthermore, federal tax liabilities would remain unsettled for years after their assessment if state courts and private persons were empowered to retroactively affect the tax consequences of completed transactions and completed tax years.

[397 F.2d at 445; citations omitted.]

The principles enunciated in *M. T. Straight Trust* and *Van Den Wymelenberg* are controlling in this case. The order of the Illinois court did not merely construe Mrs. Kilner's declaration of trust or determine its effect under Illinois law. Rather, the order voided a transaction which in 1975 was valid and completed. It is clear that although such order may affect the rights of Mrs.

Kilner and her trust under the declaration, it cannot affect the Commissioner's right to collect Federal taxes which were lawfully due for 1975 as a result of the transfer of the stock in trust.

The petitioner relies upon three estate tax cases. *First National Bank of Amarillo v. United States*, 422 F.2d 1385 (10th Cir. 1970); *Miglionico v. United States*, 323 F. Supp. 197 (N.D. Ala. 1971); *Lake Shore National Bank v. Coyle*, 296 F. Supp. 412 (N.D. Ill. 1968), revd. on other grounds 419 F.2d 958 (7th Cir. 1969). In *First National Bank of Amarillo*, a claim against an estate was filed in a State court challenging the will of the decedent. Subsequently, the claim was settled, and the settlement was approved by the State court. After examining the affidavits and proceedings in the State court but without conducting a de novo hearing on the validity and enforceability of the claim, the Federal District Court ruled that the estate was entitled to deduct the claim. On appeal, the issue was whether the District Court erred in not conducting a de novo hearing. The Tenth Circuit held that no such hearing was required since the District Court had examined the proceedings in the State court and was satisfied that the claim was valid and since the claim was of a type which previously had been recognized by the highest court of the State. That case is distinguishable from the present case. There, the court relied upon the proceedings in the State court to determine the validity of the claim against the estate, and such proceedings merely determined contractual rights under State law. The court neither considered nor decided the issue of whether a State court decision which retroactively changes property rights may be recognized for Federal tax purposes.

The decision in *Lake Shore National Bank* is also distinguishable. In that case, there was an ambiguity concerning the nature of an interest in a trust as a result of a conflict between a will and an antenuptial agreement, and the Federal District Court accepted a decision by a State court resolving that ambiguity. The *Miglionico* case may not be distinguishable, for in that case, the Federal District Court did accept a decision by a State court retroactively altering property rights on the basis that a mistake had been made. However, the *Miglionico* decision is inconsistent with the decisions by this Court, including *M. T. Straight Trust v. Commissioner, supra,* and *Davis v. Commissioner, supra,* and

by the circuits in *Van Den Wymelenberg v. United States, supra, Emerson Institute v. United States, supra,* and *Piel v. Commissioner, supra,* and accordingly, we decline to follow it.

We now deal with the petitioner's argument that in substance, Mrs. Kilner never surrendered to the trust her ownership of the shares in the petitioner. Subchapter S was enacted to permit small business corporations to avoid the corporate tax on income and to allow the shareholders the benefit of business losses during the startup period. S. Rept. 1983, 85th Cong., 2d Sess. (1958), 1958-3 C.B. 922, 1008. These privileges were limited to small businesses, and hence, the number of shareholders in a qualified corporation was limited—the initial limit was 10. The provisions were limited to small businesses in part to avoid complexities in passing through and accounting for the income of the business. S. Rept. 830, 88th Cong., 2d Sess. (1964), 1964-1 C.B. (Part 2) 505, 650. In line with such objective, section 1371(a) sets forth the requirements for a corporation to qualify under subchapter S and, as in effect in 1975, provided, in relevant part:

For purposes of this subchapter, the term "small business corporation" means a domestic corporation which is not a member of an affiliated group (as defined in section 1504) and which does not—

\* \* \* \* \* \* \*

(2) have as a shareholder a person (other than an estate) who is not an individual;

The words of the statute are clear in indicating that a trust cannot hold stock in a qualifying subchapter S corporation. That view is reinforced by the committee report describing the effect of section 1372(e), when it states:

Under section 1372(e)(3), an election terminates if the corporation ceases to be a small-business corporation. Thus, if an eleventh person or a nonresident alien becomes a shareholder in the corporation, if a corporation, partnership, or trust becomes a shareholder, or if another class of stock is issued by the corporation, the election is thereby terminated. [S. Rept. 1983, *supra,* 1958-3 C.B. at 1138-1139.]

In describing the eligible shareholders in a subchapter S corporation, section 1.1371-1(e), Income Tax Regs., states:

A corporation in which any shareholder is a corporation, trust, or partnership does not qualify as a small business corporation. The word "trust" as used in this paragraph includes all trusts subject to the provisions of subchapter D, F, H, or J (including subpart E thereof), chapter 1 of the Code and voting trusts. Thus, even though the grantor is treated as the owner of all or any part of a

trust, the corporation in which such trust is a shareholder does not meet the qualifications of a small business corporation.

In addition, section 1.1371–1(d)(1), *Income Tax Regs.*, which deals with who is considered an owner of stock for purposes of subchapter S, states, in part: "If stock is owned by a trust which is subject to the provisions of subchapters D, F, H, or J, chapter 1 of the Code, or by a voting trust, the trust is considered the shareholder even though the dividends paid to the trust are includible directly in the income of the grantor or some other person."

Such regulations have been the subject of litigation. In *Old Virginia Brick Co. v. Commissioner*, 367 F.2d 276 (4th Cir. 1966), affg. 44 T.C. 724 (1965), the stock in an electing small business corporation was held in the name of an estate, but the decedent had been dead for almost 20 years. The court held that an estate had terminated and that in reality a trust for the benefit of the family of the decedent had come into existence. The taxpayer argued that since subchapter S was enacted as remedial legislation and since the widow of the decedent received substantially all the income of the trust and reported such amounts on her Federal income tax returns, it was unreasonable for the regulations to treat the arrangement as a trust terminating the election under subchapter S. However, the court found that trusts were not to be shareholders of subchapter S corporations and that it was reasonable for the regulations to treat the arrangement as a trust for such purposes. 367 F.2d at 280.

The regulations were also upheld in *Fulk & Needham, Inc. v. United States*, 411 F.2d 1403 (4th Cir. 1969). In that case, the decedent created a testamentary trust for the benefit of his widow and children, and the trust held stock in a subchapter S corporation. The taxpayer argued that in reality the trust had been ignored and that the widow had treated the stock as her own. The court rejected such argument and found that there was no reason to ignore the trust. 411 F.2d at 1405. The court held that since a trust did exist and did hold the stock in the corporation, the subchapter S election was terminated. In a footnote, the court indicated that it was reserving judgment on the validity of such regulations when applied to a voting or "Clifford" trust. 411 F.2d at 1407.

*W & W Fertilizer Corp. v. United States*, 208 Ct. Cl. 443, 527

F.2d 621 (1975), cert. denied 425 U.S. 974 (1976), involved facts similar to those of the case now before us. The grantor established a trust to which he transferred property including stock in a subchapter S corporation. The trust was revocable during his lifetime; he was to receive the income during his lifetime; his wife and a bank were to serve as trustees; and after his death, the property was to be distributed to his family. The taxpayer in that case made substantially the same arguments as the petitioner in this case; that is, the taxpayer maintained that the corporation's qualification under subchapter S should not turn on the formality that title to the stock was held by a trust, that since the grantor was taxable on the income from the stock, he should be treated as the owner of the stock, and that it was inconsistent to treat the trust as the owner of the stock for subchapter S purposes but to treat him as taxable on the income therefrom for other purposes. The Court of Claims rejected such arguments: the court examined the legislative history and found that trusts were excluded from ownership of subchapter S stock in order to avoid complexities that would result from tracing the income of a subchapter S corporation through a trust; hence, the court concluded that Congress deliberately intended for section 1371(a)(2) to be applied on the basis of formal ownership, not economic substance. 527 F.2d at 624. In connection with the taxpayer's other arguments, the court pointed out that in applying the provisions of the tax law, it is necessary to consider the purpose of each provision and that such purposes may be carried out by treating the grantor as taxable on the income under sections 671 et seq., even though the trust is treated as the owner of the stock under section 1371(a)(2). 527 F.2d at 628. Accordingly, the court upheld the regulations and held that the subchapter S election had been terminated. 527 F.2d at 629.

A different conclusion was reached in two District Court cases. *Lafayette Distributors, Inc. v. United States*, 397 F. Supp. 719 (W.D. La. 1975); *A. & N. Furniture & Appliance Co. v. United States*, 271 F. Supp. 40 (S.D. Ohio 1967). In those cases, shareholders of subchapter S corporations transferred shares to voting trusts. The courts held that the regulations were unreasonable in treating such transfers as transfers in trust for purposes of subchapter S. 397 F. Supp. at 725; 271 F. Supp. at 47. The courts reasoned that the beneficiaries of the trusts were in substance the owners of the stock and that the voting trusts did

not result in complexities in accounting for corporate income. 397 F. Supp. at 725; 271 F. Supp. at 47.

In 1969, the Treasury Department proposed that section 1371 be amended to allow grantor and voting trusts to hold stock in a subchapter S corporation. Tax Reform Studies and Proposals, U.S. Treasury Dept., Part 2, pp. 275–276 (Feb. 5, 1969). However, the proposal was not acted upon until 1976, when section 1371 was amended to provide that the shareholders of a subchapter S corporation may include such trusts. Tax Reform Act of 1976, Pub. L. 94–455, sec. 902(c)(2)(A), 90 Stat. 1609. In discussing the change, the conference report stated the present law to be: "A trust may not be a shareholder in a subchapter S corporation." Conf. Rept. 94–1236 (1976), 1976–3 C.B. (Vol. 3) 811, 953. The 1976 changes were made applicable only to taxable years beginning after December 31, 1976. Tax Reform Act of 1976, Pub. L. 94–455, sec. 902(c)(4), 90 Stat. 1610.

In 1978, the provisions relating to grantor trusts were refined further and now provide:

SEC. 1371. DEFINITIONS.

(e) CERTAIN TRUSTS PERMITTED AS SHAREHOLDERS.—For purposes of subsection (a), the following trusts may be shareholders:

(1)(A) A trust all of which is treated as owned by the grantor (who is an individual who is a citizen or resident of the United States) under subpart E of part I of subchapter J of this chapter.

(B) A trust which was described in subparagraph (A) immediately before the death of the grantor and which continues in existence after such death, but only for the 60-day period beginning on the day of the grantor's death. If a trust is described in the preceding sentence and if the entire corpus of the trust is includible in the gross estate of the grantor, the preceding sentence shall be applied by substituting "2-year period" for "60-day period."

\* \* \* \* \* \* \*

In the case of a trust described in paragraph (1), the grantor shall be treated as the shareholder. \* \* \* [Rev. Act of 1978, Pub. L. 95–600, secs. 341(b)(1), 342(b), 701(y)(1), 92 Stat. 2843, 2921.]

The scope of our role in reviewing regulations was described by the Supreme Court in *United States v. Correll*, 389 U.S. 299, 306–307 (1967), when it said:

we do not sit as a committee of revision to perfect the administration of the tax laws. Congress has delegated to the Commissioner, not to the courts, the task of prescribing "all needful rules and regulations for the enforcement" of the Internal Revenue Code. 26 U.S.C. § 7805(a). In this area of limitless factual variations, "it is the province of Congress and the Commissioner, not the

courts, to make the appropriate adjustments." *Commissioner* v. *Stidger*, 386 U.S. 287, 296. The role of the judiciary in cases of this sort begins and ends with assuring that the Commissioner's regulations fall within his authority to implement the congressional mandate in some reasonable manner. * * *

See *Bingler v. Johnson,* 394 U.S. 741, 751 (1969). The Supreme Court, in strong and unequivocal terms, has repeatedly declared that the Treasury regulations should not be struck down lightly (see, e.g., *Bingler v. Johnson, supra* at 749–750; *Commissioner v. South Texas Lumber Co.,* 333 U.S. 496, 501 (1948); *Colgate Co. v. United States,* 320 U.S. 422, 426 (1943); *Fawcus Machine Co. v. United States,* 282 U.S. 375, 378 (1931); *Brewster v. Gage,* 280 U.S. 327, 336 (1930) ), and

it is fundamental, of course, that as "contemporaneous constructions by those charged with administration of" the Code, the Regulations "must be sustained unless unreasonable and plainly inconsistent with the revenue statutes," and "should not be overruled except for weighty reasons." *Commissioner v. South Texas Lumber Co.,* 333 U.S. 496, 501. * * * [ *Bingler v. Johnson,* 394 U.S. at 749–750.]

See E. Griswold, "A Summary of the Regulations Problem," 54 Harv. L. Rev. 398, 404 (1941).

The statute, the legislative history, and the authorities all agree that, generally speaking, trusts are not to be shareholders in a subchapter S corporation. No one would challenge the validity of the regulations insofar as they generally prohibit trusts from becoming shareholders in subchapter S corporations. Thus, the narrow question is whether the regulations are to be declared invalid because they fail to make an exception for grantor trusts. It is true that in applying many of the provisions of subchapter S, the courts have determined the ownership of stock on the basis of beneficial ownership, not record title. *Pacific Coast Music Jobbers, Inc. v. Commissioner,* 457 F.2d 1165 (5th Cir. 1972), affg. 55 T.C. 866 (1971); *Hook v. Commissioner,* 58 T.C. 267 (1972); *Hoffman v. Commissioner,* 47 T.C. 218 (1966), affd. per curiam 391 F.2d 930 (5th Cir. 1968). It is also true that for many tax purposes, the grantor of a grantor trust is treated as the owner of the trust property. *Swanson v. Commissioner,* 518 F.2d 59 (8th Cir. 1975), affg. a Memorandum Opinion of this Court; Rev. Rul. 74–613, 1974–2 C.B. 153; Rev. Rul. 70–376, 1970–2 C.B. 164; Rev. Rul. 66–159, 1966–1 C.B. 162; see also *Estate of O'Connor v. Commissioner,* 69 T.C. 165 (1977); Rev. Rul. 72–471,

1972–2 C.B. 201. Nevertheless, there is more reason for the regulations than has been recognized by the petitioner.

The purpose of section 1371(a)(2) is to avoid complexities in the administration of the provisions of subchapter S. If grantor trusts are to be allowed to hold subchapter S stock, a question will arise concerning the continued qualification of the subchapter S corporation when the grantor dies. The facts of this case illustrate the problem: if we were to ignore the transfer to the trust in 1975 when Mrs. Kilner was alive, a question would arise in 1976 after she died. For a time, the stock was still held by her trust, and an exception in favor of grantor trusts would not have protected the election by the petitioner for 1976. This problem was recognized by the draftsmen in the amendments to section 1371, and the new statutory provisions allow the trust to continue to hold the stock for a limited period of time after the death of the grantor. A complete solution of the problem required legislation to deal with the situation after the death of the grantor.[3] To avoid the complexities that would result on the death of a grantor may have been the reason the regulations treated grantor trusts in the same manner as other trusts and excluded them from ownership of subchapter S stock.

In summary, the regulations are surely consistent with the statute, they have been upheld by the Court of Claims, they reflect the law as the Congress understood it in 1976, and we cannot say that there is no reason for not excepting grantor trusts from the general prohibition. Accordingly, we conclude and hold that section 1.1371–1(e), Income Tax Regs., is valid and that the transfer of her stock in trust by Mrs. Kilner caused the petitioner's election under subchapter S to terminate in 1975.

*Decision will be entered for the respondent.*

---

[3]There are many complaints about the complexities in subchapter S and the traps created for many taxpayers. *Mason v. Commissioner*, 68 T.C. 163, 168–169 (1977). When Congress amended sec. 1371 to deal with the problems of the grantor trust, it decided that such trusts should be allowed to hold subchapter S stock in the future subject to the restrictions provided therein. Had such changes been made applicable to the past years, the trap for this taxpayer, and for others similarly situated, would have been eliminated, but Congress decided to make the changes applicable only prospectively.