T. J. HENRY ASSOCIATES, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

ESTATE OF THOMAS J. HENRY, DECEASED, ARLEEN COSTELLO (FORMERLY ARLEEN HENRY), ADMINISTRATRIX, AND ARLEEN COSTELLO (FORMERLY ARLEEN HENRY), SURVIVING WIFE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 2826–81, 2827–81.     Filed May 16, 1983.

---

[16]See *Reiff v. Commissioner*, 77 T.C. 1169, 1173 (1981).

*Kenneth E. Ahl*, for the petitioners.
*David M. Kuchinos*, for the respondent.

OPINION

WHITAKER, *Judge*: For the years 1976 and 1977, deficiencies were determined by respondent as follows:

*Against the Estate of Thomas J. Henry, Deceased*[1]

| | |
|---|---|
| 1976 | $15,701 |
| 1977 | 7,938 |

*Against Thomas J. Henry Associates, Inc.*

| | |
|---|---|
| FYE Sept. 30, 1976 | $6,541 |
| FYE Sept. 30, 1977 | 1,026 |

Due to concessions by the parties, the sole issue for decision is whether T. J. Henry Associates, Inc. (the corporation), is to be taxed as an electing small business corporation under section 1372(a)[2] during the years 1976 and 1977. A computation under Rule 155, Tax Court Rules of Practice and Procedure, will be necessary irrespective of how the case is decided since the parties have stipulated that a 1978 new jobs credit in the amount of $5,920 will be available to the shareholders on their individual Federal income tax returns if respondent's determination as to the status of the corporation is upheld, whereas if petitioners' contention as to the status of the corporation is upheld, the unused portion of the corporation's fiscal year 1978 new jobs credit in the amount of $5,738 can be carried back to the corporation's 1976 and 1977 fiscal years.

This case was submitted fully stipulated and the facts are found accordingly. The petitions state that the corporation had its principal office in Schwenksville, Pa., and that Mrs. Arleen

---

[1]Thomas J. Henry died Mar. 2, 1980. During the year 1976, he was unmarried. During 1977, he remarried and filed a joint Federal income tax return with his wife. Therefore, the statutory notice for 1977 was issued to the estate and to Mrs. Arleen Henry, surviving wife, who has since remarried and assumed the name of Arleen Costello.

[2]Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954 as amended.

Costello (formerly Arleen Henry), who is the administratrix of the estate as well as a petitioner for 1977 in her individual capacity, resided in Schwenksville, Pa., when the petitions were filed.

The corporation was incorporated under the laws of Pennsylvania in 1972 and was engaged in the commercial printing business. At least until September 22, 1976, 900 of the 1,000 issued and outstanding shares of stock were owned and held by the decedent, Thomas J. Henry. The remaining 100 shares were owned in equal amounts by two persons unrelated to Mr. Henry. Shortly after incorporation, the corporation properly elected subchapter S treatment and its status as a subchapter S corporation would continue through its fiscal years ending September 30, 1976, and September 30, 1977, unless action taken by Mr. Henry in 1976 was effective to terminate that election.

Prior to 1976, Mr. Henry had been divorced and had received the custody of his four children, all of whom were minors during 1976. During 1976 and 1977, Mr. Henry was the legal and natural guardian of his four children. On September 22, 1976, Mr. Henry transferred one of his shares of stock in the corporation to himself as custodian for his four children pursuant to the Pennsylvania Uniform Gifts to Minors Act. This stock transfer was duly evidenced on the corporate books and records by the issuance of a stock certificate on that date. The parties are not in agreement as to the value to be attributed to this one share of stock, petitioners claiming its value to be approximately $273 and respondent claiming it to be $63. On this record, we are unable to determine the exact value of the share of stock but it is clear that the value of the interest of a child in the corporation was not a significant amount.

Neither in his capacity as a stockholder of the corporation holding the one share of stock under the Pennsylvania Uniform Gifts to Minors Act for the benefit of his four children nor in his capacity as the natural and legal guardian of his

four children did Mr. Henry file a consent to subchapter S status.[3] The corporation treated the transfer of the one share of stock to Mr. Henry in this fiduciary capacity as a transfer to a new shareholder who did not consent and therefore as a termination of the subchapter S status as of the commencement of the fiscal year ending September 30, 1976. Consequently, for that 1976 fiscal year and thereafter, the corporation filed its tax returns as a regular corporation.

No gift tax returns were filed or required to be filed with respect to this transfer of one share of stock. Mr. Henry died on March 2, 1980. His second wife, Mrs. Arleen Henry, qualified as administratrix of his estate and she was also designated as successor custodian. The designation as successor custodian was approved by three of the four children, each of whom was then over the age of 14 years. The estate tax return for decedent's estate consistently treated the decedent as owning on the date of death only 899 shares of stock. There is nothing in the record indicating that Mr. Henry or his wife as successor custodian ever opened a bank account for any of the children.[4] However, no dividends were declared or paid on this stock subsequent to the 1976 stock transfer.

In early 1980, the 900 shares of stock in the corporation owned by the Henry family were sold to an independent third party. The agreement for sale and the corporate action authorizing the agreement recognized the stock ownership of the four children.[5] The stipulation recites that the purchase price for the 900 shares of stock owned by the Henry family was a note in the amount of $40,000 and the assumption of certain liabilities. In the latter part of 1981, four checks were issued respectively to the Bryn Mawr Trust Co. as guardian for the estate of one of the minor children and to each of the other

---

[3]At least theoretically, one of the children might have taken or attempted to take some action to evidence consent to subch. S status. While the record is silent, we assume no such action was attempted.

[4]Since the decedent left no will, as indicated by the estate tax return, the four children inherited property, and we presume bank accounts were opened for them.

[5]Although the parties have stipulated that the 900 shares of stock of the Henry family were sold, the agreement of sale and the consent meeting of shareholders and directors which are also stipulated, contain recitals that Mrs. Henry as administratrix and as custodian owned all of the outstanding 1,000 shares of stock. This discrepancy appears to be immaterial to the resolution of the case.

three children, which distributions were stipulated to represent that part of the proceeds of sale to which each child was entitled. Each check was in the amount of $15.75 and each was signed by Mrs. Henry as administratrix.

There is no indication in this record of any failure on the part of any person to treat the children as the collective owners of the one share of stock. While there are no stipulated facts bearing on the reason for this transfer of the single share of stock, the obvious inference is that it was done solely as a means of causing the subchapter S election to terminate retroactively as of the commencement of the 1976 fiscal year, a result expected to flow from the failure of the new shareholder to consent to the election. We so find for purposes of this case.[6]

As an ultimate fact, we find that beneficial ownership of the one share of stock was vested in the four children of Mr. Henry on September 22, 1976.[7]

A transfer under the Uniform Gifts to Minors Act properly made under State law is recognized by the Internal Revenue Service as effective to transfer the incidence of income tax from the parent to the child except to the extent that custodial funds are used to discharge the support obligation of the parent. See Rev. Rul. 59–357, 1959–2 C.B. 212, and Rev. Rul. 56–484, 1956–2 C.B. 23.[8] Under appropriate circumstances, we recognize as valid and effective in a subchapter S context a transfer of shares of stock to a custodian under a State's uniform gifts to minors act. See, e.g., *Kirkpatrick v. Commissioner*, T.C. Memo. 1977–281. Respondent's regulations articulate the requirements for recognition as follows:

A donee or purchaser of stock in the corporation is not considered a shareholder unless such stock is acquired in a bona fide transaction and the donee or purchaser is the real owner of such stock. The circumstances, not

---

[6]Both petitions recite that Mr. Henry "intentionally failed to file a consent."

[7]There is nothing in the stipulation as to legal title to the share of stock, and the parties have not briefed this question. We assume that under Pennsylvania law, title would be either in the four children as tenants in common or in the custodian, but this is not material for our disposition of the case.

[8]Although not material in this case, we note that for estate tax purposes, respondent treats the value of custodial stock as part of the estate of a parent custodian who dies holding stock in such capacity before the donee attains the age of 21 years. See Rev. Rul. 59–357, 1959–2 C.B. 212, and Rev. Rul. 57–366, 1957–2 C.B. 618. We have held to the same effect. See, e.g., *Estate of Prudowsky v. Commissioner*, 55 T.C. 890 (1971), affd. per curiam 465 F.2d 62 (7th Cir. 1972).

only as of the time of the purported transfer but also during the periods preceding and following it, will be taken into consideration in determining the bona fides of the transfer. Transactions between members of a family will be closely scrutinized. [Sec. 1.1373–1(a)(2), Income Tax Regs.]

The question here is somewhat unique. We must first determine whether the transfer was bona fide. If so, we must then determine the effect to be given a transfer to a custodian under a uniform act where the transfer is accomplished solely to permit the termination of subchapter S status. This was the question which we expressly reserved in *Hook v. Commissioner*, 58 T.C. 267, 276 (1972).

We have found that the transfer was treated as effective by everyone concerned and that Mr. Henry as custodian and as natural legal guardian intentionally failed to consent to the subchapter S election. Respondent's regulations, in pertinent part, provide that:

Sec. 1.1372–3. Shareholders' consent.

(a) *In general.* * * * The consent of a minor shall be made by the minor or by his legal guardian, or his natural guardian if no legal guardian has been appointed. * * *

Sec. 1.1372–4. Termination of election.

(b) *Methods of termination.*—(1) *Failure of new shareholder to consent.* An election under section 1372(a) shall terminate if any person who was not a shareholder on the first day of the first taxable year for which the election is effective, or on the day on which the election is made (if such day is later than the first day of the taxable year), becomes a shareholder and does not consent to the election under section 1372(a) within the time prescribed by paragraph (b) of sec. 1.1372–3. * * *

The action taken by Mr. Henry in transferring in 1976 one share of stock to himself as custodian created a new shareholder who failed to consent, thus triggering termination of the election, unless there is a basis for failing to recognize the transfer for Federal tax purposes. Respondent would have us ignore this transaction on the ground that it lacked economic substance or at least that petitioners have failed to show the existence of economic substance.

Respondent's arguments seem to be pitched largely on the burden of proof in two aspects. Respondent complains that no evidence has been presented showing active involvement in corporate affairs by Mr. Henry as custodian. In addition, respondent argues variously that the father's interest as majority shareholder was in conflict with his interest as

custodian for the minor minority shareholders, or that petitioners have not negated such conflict. Respondent's arguments are beside the point. No formal issue has been raised in the statutory notice or in the pleadings as to the existence of a conflict of interest between majority and minority shareholders. Neither did we hold in *Goodman v. Commissioner*, 74 T.C. 684 (1980), affd. without published opinion 673 F.2d 1332 (7th Cir. 1981), or elsewhere, that a custodian must affirmatively prove action in the best interests of his beneficiaries in order for us to find that the custodianship had economic substance. While petitioners do have the burden of proving the bona fides and reality of the transfer of stock, there is no requirement that every hypothetical argument must be negated. We hold that petitioners have established a prima facie case, shifting to respondent the burden of going forward with proof, if any there be, of conflict of interest on the part of the fiduciary. Respondent offered no such facts, and we assume there were none.

Respondent also ignores the mandate of his own regulations to the effect that circumstances both before and after the transfer should be considered. Sec. 1.1373–1(a)(2), Income Tax Regs. Immediately following Mr. Henry's death, Mrs. Henry was appointed custodian, and in connection with the sale of the corporation, she scrupulously recognized the interests of the minor children in her two fiduciary capacities, as successor custodian and as administratrix of the estate.

In a number of cases, we have declined to give effect to transfers for subchapter S purposes where for various reasons we held that the transfer was not bona fide or lacked economic reality. Thus, in *Hook v. Commissioner, supra,* we concluded that the transfer to the petitioner's attorney was a matter of accommodation to the petitioner. In *Wilson v. Commissioner,* 560 F.2d 687 (5th Cir. 1977), affg. a Memorandum Opinion of this Court, the court concluded that the transfer by the controlling shareholder to his brother of one share of stock was also an accommodation. Beneficial ownership was not transferred. Similarly, we have held that where a parent in effect made only a paper transfer of stock under the Uniform Gifts to Minors Act but maintained actual control over the interest of the children in the corporation, failing to account for dividends purported to have been paid and retaining the economic

benefits of ownership of the stock purported to have been transferred, such transfers will not be given effect for subchapter S purposes. See, for example, *Beirne v. Commissioner*, 52 T.C. 210 (1969); and *Duarte v. Commissioner*, 44 T.C. 193 (1965). These cases simply have no application here. As we have found, neither the decedent nor Mrs. Henry as successor custodian took any action inconsistent with the transfer of the share of stock under the Uniform Gifts to Minors Act. And in every instance referred to in the stipulated facts where beneficial ownership of the share of stock in the four children should have been recognized, appropriate recognition was given to the minor's rights.

It is, of course, a fact that the value of the single share of stock was small, no dividends were paid, and apparently no bank account or accounts were established by the custodian, at least prior to the sale of the business. But the value of the interest of a new shareholder in a corporation has no bearing on whether or not that shareholder must be recognized as such for tax purposes, provided the transfer is valid and effective to transfer beneficial interest. We have scrutinized this family transfer "closely" as the regulations direct, and we find in the stipulated facts sufficient evidence on which to base a finding that the transfer was bona fide. The transfer in this case meets the test of the regulations and case law.

Respondent would in effect have us decline to recognize this transfer to the children under the Uniform Gifts to Minors Act on the grounds that in substance the transfer effected no material change in the control of the corporation by Mr. Henry. Respondent fails to recognize, however, that it is essentially this same argument which taxpayers have unsuccessfully made in a series of grantor trust cases.[9] Thus in *W & W Fertilizer Corp. v. United States*, 208 Ct. Cl. 443, 527 F.2d 621 (1975), the taxpayer argued that transfer of subchapter S stock to a revocable grantor trust should not be given effect so as to terminate subchapter S status. The Court of Claims, however, concluded that the legislative history mandated that for the purposes of subchapter S qualification "the organiza-

---

[9] Prior to the Tax Reform Act of 1976 (Pub. L. 94–455, 90 Stat. 1520), a trust was not an eligible shareholder under sec. 1371. Thus, transfer of stock to a trust would terminate a subch. S election.

tional form" is controlling. We reached the same result in *American Nurseryman Publishing Co. v. Commissioner*, 75 T.C. 271 (1980), affd. without published opinion 673 F.2d 1333 (7th Cir. 1981), in which we specifically noted that the Court of Claims had "concluded that Congress deliberately intended for section 1371(a)(2) to be applied on the basis of formal ownership, not economic substance." 75 T.C. at 280. It is evident that a like standard must apply in determining when there has been a termination of subchapter S status under section 1372(e) by reason of the addition of a new shareholder, whether the termination is governed by subsection 1 (requirement of consent) or by subsection 3 (addition of an ineligible shareholder). There is no more reason to recognize a grantor trust as a new shareholder than a custodianship, and we have expressly held that "The dominion and control over the securities exercised by petitioners [as custodian] is not sufficient, standing alone, to defeat their intention to make a valid gift to their minor children [under the Ohio statute]." *Friedman v. Commissioner*, T.C. Memo. 1968–145, 27 T.C.M. 714, 725, 37 P-H Memo T.C. par. 68,145, at 804 (1968), affd. per curiam 421 F.2d 658 (6th Cir. 1970). A valid gift under a Uniform Gifts to Minors Act must be held to create a new shareholder. Respondent's regulations, quoted above, require this result.

Respondent argues that the transfer should not be recognized in a subchapter S situation unless the custodian is active in the management of the company as a fiduciary affirmatively representing the interests of the minor children. It is on this basis that respondent would distinguish *Kirkpatrick v. Commissioner*, T.C. Memo. 1977–281. As we have pointed out, he argues that the interest of Mr. Henry as a majority shareholder was in conflict with his fiduciary interest as custodian and that no evidence was presented to show that the custodian acted in the best interest of the children. Respondent has not, however, directed our attention to any decision of any court which stands for the proposition that a person holding stock as custodian for minors or an individual as a minority shareholder must be actively engaged in management of the corporate

business in order for status as a shareholder to be recognized for purposes of a subchapter S election or termination.[10] Such a rule would severely erode the utility of the subchapter S provisions. Evidence of active participation in corporate management by a custodian is helpful but its absence is not fatal.

It is generally recognized that subchapter S status "can be controlled through management of the circumstances relating to new shareholders." Thus, a transfer deliberately made to effect a termination should be recognized. 7 J. Mertens, Law of Federal Income Taxation, sec. 41B.13, at 24 (1976 rev.). We find nothing in the statute, regulations, or case law to support respondent's position. If a single share of stock is effectively transferred to a new shareholder, that shareholder must, under section 1372(e)(1), consent to the subchapter S election, or the election is terminated. We conclude that so long as there is a bona fide transfer of stock to a new shareholder, a transfer in fact, and not merely on paper, the reasons for the transfer and the value of the interest transferred are immaterial. Beneficial interest in the single share of stock was effectively transferred in this case. On this record, we hold for petitioners.

*Decisions will be entered under Rule 155.*

---

[10]See, for example, *Auld v. Commissioner*, T.C. Memo. 1978–508, in which we seem to have assumed that if the transfer to the petitioner's son had been effected, it would have been recognized for purposes of terminating the subch. S election.